# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| SAGE GLOBAL SERVICES LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>4TH PARADIGM (BEIJING) TECHNOLOGY CO., LTD.,<br><br>Defendant. | Case No. 5:23-cv-04534-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>[Re: ECF No. 61] |

Before the Court is Defendant 4th Paradigm (Beijing) Technology Co., Ltd.'s ("4th Paradigm") motion to dismiss Plaintiffs Sage Global Services Limited's ("Sage Global") and Sage Software, Inc.'s ("Sage Software") (collectively, "Sage") First Amended Complaint for lack of personal jurisdiction. ECF 61 ("Mot."). Sage filed an Opposition. ECF 64 ("Opp."). 4th Paradigm filed a Reply. ECF 65 ("Reply"). The Court has considered the moving and responding papers, the relevant portions of the record, and arguments made by the parties following the completion of jurisdictional discovery on May 29, 2025. For the reasons described below, the Court GRANTS 4th Paradigm's motion to dismiss for lack of personal jurisdiction.

## I. BACKGROUND

### A. The Parties and Their Marks

Plaintiff Sage Global is a British private limited company with its principal place of business in Newcastle, United Kingdom. ECF 58 ("FAC") ¶ 7. Plaintiff Sage Software is a Virginia corporation with its principal place of business in Atlanta, Georgia. *Id.* ¶ 8. Sage employs approximately 500 people in California, with over 300 based in its San Jose office. *Id.* ¶ 46. In 2024, Sage generated tens of millions of dollars in revenue in California, and sales in the state accounted

1  for over 10% of Sage's sales revenue in the United States. *Id.*

2  Sage owns the SAGE trademark ("SAGE Mark") and has used the SAGE Mark in connection with its software and Artificial Intelligence ("AI") products and services throughout the United States for over thirty years. *Id.* ¶¶ 11, 13.

Defendant 4th Paradigm is a Chinese company with its principal place of business in China. *Id.* ¶ 9. According to Sage, 4th Paradigm markets and sells products that incorporate the SAGE Mark. *Id.* ¶ 20. Sage alleges that 4th Paradigm has marketed and sold its products to businesses throughout California and the United States. *Id.* ¶ 21.

### B. Procedural Background

On September 1, 2023, Sage filed its original Complaint against 4th Paradigm for infringing the SAGE Mark. ECF 1. 4th Paradigm filed a motion to dismiss Sage's complaint for lack of personal jurisdiction. ECF 32. On November 26, 2024, the Court granted 4th Paradigm's motion to dismiss for lack of personal jurisdiction without prejudice and granted Sage's request to conduct jurisdictional discovery. ECF 55.

On March 31, 2025, after completing jurisdictional discovery, Sage filed its First Amended Complaint. ECF 58 ("FAC"). In the FAC, Sage asserts four claims against 4th Paradigm: 1) federal trademark infringement in violation of 15 U.S.C. § 1114(1), FAC ¶¶ 51-58; 2) unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A), *id.* ¶¶ 59-67; 3) California common law trademark infringement, *id.* ¶¶ 68-72; and 4) California unfair competition in violation of California State Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, *id.* ¶¶ 73-75.

### C. 4th Paradigm and California Contacts

*Facts Alleged in the FAC*

In the FAC, Sage has alleged the following facts in support of personal jurisdiction:

1. 4th Paradigm has directed and targeted its actions at California and its residents, including targeting large research institutions such as Stanford University for collaboration and the development of its products. *Id.* ¶ 5.

2. 4th Paradigm has marketed and sold its software solutions and services to businesses throughout California and the United States. *Id.* ¶ 21.

2

3. At 4th Paradigm's offices in Beijing, China, which it occupied until August 2024, 4th Paradigm maintained a wall displaying the names and trademarks of dozens of 4th Paradigm's customers and contacts around the world, including the United States. *Id.* ¶ 22.

4. 4th Paradigm has business relationships or agreements with numerous companies or subsidiaries of companies that are based in the United States and has provided products and services under the SAGE Mark to customers in the United States. ECF 58, ¶ 23. Those companies include Yum China Holdings, Inc. (who owns KFC and Pizza Hut and has offices in the United States), the National Basketball Association, Starbucks, Burger King, Kérastase, Budweiser, and Mazda. *Id.* ¶ 23.

5. In January 2020, 4th Paradigm attended the Consumer Electronics Show (the "CES Event") in Las Vegas, Nevada. *Id.* ¶ 24. At the CES Event, 4th Paradigm showcased its "Prophet Sage" platform and "SageOne" software systems. *Id.* 4th Paradigm also unveiled its graphical interactive AI tool "SageExpress." *Id.* At the CES Event, 4th Paradigm marketed and promoted its products and services under the SAGE mark. *Id.* ¶ 25. 4th Paradigm's attendance at the CES Event received news coverage. *Id.* ¶ 26.

6. In December 2020, 4th Paradigm announced an agreement ("Yescom Agreement") with Yescom USA Inc. ("Yescom"), a California based e-commerce business, through which 4th Paradigm would sell to Yescom software platforms and products that would enable Yescom to provide marketing services for millions of consumers in the United States. ECF 58, ¶ 27. Sage alleges that, under the Yescom Agreement, 4th Paradigm agreed to complete the installation and deployment of 4th Paradigm's Sage EE platform for use by Yescom in California. ECF 58, ¶ 28.

7. 4th Paradigm received significant investments from investment firms and financial institutions in the United States, including Goldman Sachs and California-based Sequoia Capital. *Id.* ¶¶ 5, 29.

8. In August 2020, 4th Paradigm participated in the Association for Computing Machinery's Knowledge and Data Mining Cup (the "KDD Cup"), held in San Diego,

3

California. *Id.* ¶ 30. At the KDD Cup, 4th Paradigm co-sponsored a competition with Stanford University and Google. *Id.* 4th Paradigm's participation in this event is promoted on its website. *Id.*

9. In 2022, 4th Paradigm submitted an application for a competition hosted by the Industrial Designers Society of America ("IDSA"), a United States based industry group. *Id.* ¶ 31. 4th Paradigm's Sage AIOS operating system received recognition on IDSA's website. *Id.* ¶ 31.

10. In March 2023, the U.S. Department of Commerce's Bureau of Industry and Security blacklisted 4th Paradigm and added 4th Paradigm to its "Entity List." *Id.* ¶ 32.

11. In June 2024, 4th Paradigm's CEO, Dai Wenyuan, attended an interview with Bloomberg TV about the launch of 4th Paradigm's "Sage platform 5.0," or Sage AIOS. *Id.* ¶ 33. During the interview, 4th Paradigm's CEO stated that 4th Paradigm has more than 130 customers that are "Fortune 500 and listed companies," including Starbucks, Burger King and KFC. *Id.* ¶ 33. Sage alleges that many of these customers use 4th Paradigm products and services that incorporate the SAGE Mark in the United States and 4th Paradigm itself does not know where its customers have deployed 4th Paradigm products incorporating the SAGE Mark. *Id.* ¶ 33.

12. Sage alleges that at least three businesses that have purchased products from 4th Paradigm that incorporate the SAGE Mark left reviews on a website by Gartner, Inc. ("Gartner"), a third-party technological research and management consulting firm, stating that they have deployed the product in the United States. *Id.* ¶ 34.

*Evidence from Jurisdictional Discovery*

4th Paradigm submitted the following evidence obtained through jurisdictional discovery that shows the following:

1. 4th Paradigm received investments from Sequoia Capital China and Goldman Sachs Asia team. *See* ECF 61-4, Rutowski Decl., Ex. C., Deposition of Chai Yifei, at 46:15-47:15.

2. 4th Paradigm does not work with any American research institutions. *Id.* at 47:16-48:5.

4

3. 4th Paradigm has never issued a product license in the United States under the Sage mark. *Id.* at 44:10-13.

4. 4th Paradigm never delivered any products under the Sage mark to any customers in California or the United States. *Id.* at 13:17-23, 15:5-10, 62:14-18, 70:2-16.

5. The Yescom Agreement was negotiated between 4th Paradigm and Yescom's representatives in China, was governed by Chinese law and contained a dispute resolution clause specifying a court in China. ECF 39-1, Chai Yifei Decl. ¶ 5. Jurisdictional discovery shows that the Yescom Agreement was never carried out and that no services and software were provided under the agreement. ECF 61-4, Rutowski Decl., Ex. C. at 38:22-25; 42:8-9.

6. The KDD Cup was an algorithm or model competition, and 4th Paradigm's participation in the competition did not involve any Sage branded products. *Id.* at 49:10-20.

7. 4th Paradigm's User Interface ("UI") design team communicated remotely with the IDSA to receive the award for its Sage AIOS operating system in 2022. *Id.* at 52:16-53:5.

8. 4th Paradigm attended the CES Event in Nevada in 2020 where it showed one Sage device, one Sage logo, and demo of the conceptual design of Sage Express. *Id.* at 55:14-17. To the best of 4th Paradigm's knowledge, the flyers it passed out at the CES Event did not contain the term "Sage." ECF 61-5 at 8.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a pleading for "lack of personal jurisdiction." "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). California's long-arm statute is coextensive with federal due process requirements. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–801 (9th Cir. 2004). "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"

*Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal Jurisdiction may be either general or specific. General personal jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quotation marks and citation omitted). Specific personal jurisdiction exists when the defendant's contacts with the forum state are more limited but the plaintiff's claims arise out of or relate to those contacts. *Id.* at 127–28.

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Challenge to personal jurisdiction under Rule 12(b)(2) may be based on materials outside the complaint. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true. Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (internal quotation marks and citations omitted).

### III.  DISCUSSION

#### A.  General Jurisdiction

In the opposition, Sage states that it "do[es] not contend that the Court has general personal jurisdiction over [4th Paradigm]." Opp. at 4 n.1. As the Court previously found in the Order Granting Defendant's Motion to Dismiss for Lack of Personal Jurisdiction Without Prejudice and Granting Plaintiffs' Request to Conduct Jurisdictional Discovery, 4th Paradigm is not subject to general jurisdiction in California because it is incorporated under Chinese law and maintains its principal place of business in China. ECF 55 at 4.

#### B.  Specific Jurisdiction

4th Paradigm argues that, after jurisdiction discovery, Sage has still failed to establish that

the Court can exercise specific jurisdiction over 4th Paradigm. Mot. at 10. In response, Sage argues that the Court can exercise personal jurisdiction over 4th Paradigm pursuant to California's long-arm statute, Cal. Civ. Proc. Code § 410.10 or the federal long-arm statute, Fed. R. Civ. P. 4(k)(2). Opp. at 3.

Specific jurisdiction arises when a defendant's specific contacts with the forum state give rise or relate to the claim in question. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414–16 (1984). "A court exercises specific jurisdiction where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain Rotterdam BV v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).

### 1. Personal Jurisdiction under California's Long-Arm Statute

To analyze specific personal jurisdiction, courts "consider the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006). The Ninth Circuit has established a three-prong test for whether a court can exercise specific personal jurisdiction over a non-resident defendant: (1) the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden on the first two prongs. *Id.* "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (internal quotation marks and citation omitted).

#### a. Purposeful Direction

The first prong of the analysis asks whether a defendant has "purposefully direct[ed] his activities or consummate[d] some transaction with the forum or resident thereof; or perform[ed]

7

some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802. "Purposeful direction" and "purposeful availment" are two different concepts, the former most often used in suits sounding in tort and the latter in suits sounding in contract. *Id.* Here, a purposeful direction analysis is most appropriate because this action involves a dispute over possible trademark infringement, which is most analogous to a tort. *Deal Point Trading v. Standard Process, Inc.*, 2020 WL 6106617, at *3 (S.D. Cal. Apr. 20, 2020) (trademark infringement).

Under the purposeful direction test, "a defendant purposefully directed his activities at the forum if he: '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.' " *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting *Calder v. Jones*, 465 U.S. 783 (1984)). The analysis of these factors must focus on the "defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). "[M]ere injury to a forum resident is not a sufficient connection to the forum. . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 1125.

### i. Intentional Acts

An "intentional act" is "an actual, physical act in the real world" that the actor has the "intent to perform." *Schwarzenegger*, 374 F.3d at 806. The Court finds that the Sage has identified contacts that are "intentional acts" in the FAC.

In the FAC, Sage alleges the following acts by 4th Paradigm: 1) 4th Paradigm has sold its software solutions and services to businesses throughout California, FAC ¶ 21; 2) 4th Paradigm has business relationships with companies based in the United States, *id.* ¶¶ 22-23; 3) in January 2020, 4th Paradigm attended the Consumer Electronics Show (the "CES Event") in Las Vegas, Nevada, where 4th Paradigm marked its products under the SAGE Mark at the event, *id.* ¶¶ 24-26; 4) in December 2020, 4th Paradigm announced an agreement with the California-based Yescom to install and deploy 4th Paradigm's Sage EE platform for Yescom in California, *id.* ¶ 28; 5) 4th Paradigm has received significant investments from investment firms and financial institutions in the United

8

States, *id.* ¶ 29; 6) in August 2020, 4th Paradigm participated in the KDD Cup in San Diego and co-sponsored a competition with Stanford University and Google at the KDD Cup, *id.* ¶ 30; 7) 4th Paradigm has received several awards and recognition from industry groups based in the United States, including an award from the IDSA for 4th Paradigm's Sage AIOS operating system in 2022, *id.* ¶ 31; 8) 4th Paradigm's CEO Day Wenyuan stated in an interview with Bloomberg in June 2024 that 4th Paradigm has U.S. companies as its customers, *id.* ¶ 33; and 9) at least three business left reviews on Gartner's website stating that they purchased 4th Paradigm's SAGE-branded products and deployed those products in the United States, *id.* ¶ 34.

As a result of jurisdictional discovery, 4th Paradigm has submitted evidence that directly contradicts some of Sage's allegations: 1) 4th Paradigm received investments from Sequoia Capital China and Goldman Sachs Asia team. *See* ECF 61-4, Rutowski Decl., Ex. C., Deposition of Chai Yifei, at 46:15-47:15; 2) 4th Paradigm does not work with any American research institutions, *id.* at 47:16-48:5; 3) 4th Paradigm never delivered any products under the Sage mark to any customers in California, *id.* at 13:17-23, 15:5-10, 62:14-18, 70:2-16; 4) the Yescom Agreement was never carried out and no services or software were provided under the Yescom Agreement, *id.* at 38:22-25; 42:8-9; 5) 4th Paradigm's participation in the KDD Cup did not involve any Sage branded products, *id.* at 49:10-20; 6) 4th Paradigm's UI design team communicated remotely with the IDSA to receive the award for its Sage AIOS operating system in 2022, *id.* at 52:16-53:5; 7) 4th Paradigm attended the CES Event in Nevada in 2020, *id.* at 55:14-17.

While some of Sage's allegations are undermined by evidence from jurisdictional discovery, the Court finds that Sage has met its burden of establishing that 4th Paradigm performed "intentional acts."

### ii. Expressly Aimed at the Forum

The intentional contact must be "expressly aimed at the forum state." *Life360, Inc. v. Advanced Ground Info. Sys., Inc.*, 2015 WL 5612008, at *6 (N.D. Cal. Sept. 21, 2015). The analysis focuses on the "defendant's contacts with the forum state itself, not the defendant's contacts with the persons who reside there." *Walden*, 571 U.S. at 285.

4th Paradigm argues that the allegations in the FAC are still not sufficient to satisfy the

9

"express aiming" prong. Mot. at 15. In response, Sage argues that it has alleged sufficient facts supporting that 4th Paradigm has purposefully directed its activities to California. Opp. at 5.

The Court finds that Sage has failed to make a *prima facie* case establishing that 4th Paradigm "purposefully direct[s]" its activities to California or that Sage's claims arise out of or relate to such contacts. As to 4th Paradigm's received investments from the United States, Compl. ¶¶ 5, 29, jurisdictional discovery shows that 4th Paradigm did not engage in investment discussions in California, but instead received those investments from Goldman Sachs Asia and Sequoia's China branch. ECF 39-1 at 9; ECF 61-4, Rutowski Decl., Ex. C., Deposition of Chai Yifei, at 46:15-48:5; *see X Corp. v. Ctr. for Countering Digital Hate Ltd.*, 724 F. Supp. 3d 921, 941 (N.D. Cal. 2024) ("[M]erely receiving generalized donations from California donors, and not aiming any activity at the forum specifically, cannot confer jurisdiction.").

As to 4th Paradigm's collaboration with research institutions in this District, Compl. ¶ 5, jurisdictional discovery shows 4th Paradigm does not collaborate with Stanford or any research institution in the United States. ECF 61-4, Rutowski Decl. Ex C., Deposition of Chai Yifei, at 47:16-48:5. Absent evidentiary support, Sage's general allegations of 4th Paradigm's connection to research institutions based in California are insufficient to establish that 4th Paradigm's acts "expressly aimed" at California. *Medimpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*, No. 19-cv-01865, 2020 WL 1433327, at *12 (S.D. Cal. Mar. 24, 2020) (holding that the establishment of a joint venture with a California-based plaintiff is insufficient to show defendant's act expressly aimed at California).

As to 4th Paradigm's business relationship with U.S. companies, Compl. ¶¶ 22-23, 33, jurisdictional discovery shows that, other than the Yescom Agreement, 4th Paradigm's business relationships are with those companies' Chinese branches or subsidiaries in China. *See* ECF 61-4, Rutowski Decl., Ex. C., Deposition of Chai Yifei, at 30:23-31:24, 33:19-35:24 (stating that 4th Paradigm's customers include Starbucks China, Burger King's Chinese company, Yum China (the Chinese operator of KFC), Mazda's Chinese team, NBA China, L'Oreal China, and AB InBev. China). As to 4th Paradigm's Yescom Agreement involving the sale of 4th Paradigm's software solutions and products in California, the agreement was negotiated in China, in Chinese, and

10

contained a clause that the agreement was to be governed by relevant Chinese law. ECF 39-1, Chai Yifei Decl., ¶ 5. Jurisdictional discovery also confirms that the relationship was terminated before any products or services were provided to Yescom. *Id.*; ECF 61-4, Rutowski Decl., Ex. C., Deposition of Chai Yifei, at 37:17-20, 38:22-25, 42:8-9, 44:10-13. The Court finds the Yescom Agreement is insufficient to establish that 4th Paradigm expressly aimed at California. *See Walden*, 571 U.S. at 285 (personal jurisdiction analysis focuses on the "defendant's contacts with the forum state itself, not the defendant's contacts with the persons who reside there"); *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008) (emphasizing that a one-time contract or isolated transaction does not create a substantial connection or ongoing obligations with the forum state). Accordingly, the Court finds that those allegations are insufficient to establish 4th Paradigm conducted an intentional act that aimed at California. *See Schwarzenegger*, 374 F.3d at 802.

As to 4th Paradigm's participation in the KDD Cup in San Diego and the IDSA competition, FAC ¶ 30-31, the Court finds that those contacts were not expressly aimed at California. Jurisdictional discovery shows that the KDD Cup "is an algorithm or model competition" that does not involve commercialized SAGE products. ECF 61-4, Rutowski Decl., Ex. C., Deposition of Chai Yifei, at 49:10-20. As to the IDSA competition, jurisdictional discovery shows that 4th Paradigm's UI design team participated in the competition remotely. *Id.* at 52:16-53:5. The Court finds that this evidence does not show 4th Paradigm connected to California "in a meaningful way." *Walden* 571 U.S. 277 at 290; *see Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023) (holding a defendant cannot be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.").

As to the third-party reviews of 4th Paradigm's SAGE-branded products on Gartner's website, FAC ¶ 34, the Court previously found those reviews do not support an inference that infringing products were sold in California. ECF 55 at 6. Jurisdictional discovery has not established anything to the contrary. *See* Rutowski Decl. Ex. C at 44:10-13 ("[4th Paradigm has] never issued a product license to the United States under the Sage mark."). Sage argues that, because 4th Paradigm "has no response for how these deployments of [4th Paradigm's] SAGE-branded products and services in the United States took place," the Court should resolve this disputed fact in Sage's

11

favor. Opp. at 8, 12. The Court notes that Sage acknowledges that "[t]here is, admittedly, not much evidence on this point." Opp. at 12. Here, jurisdictional discovery shows that 4th Paradigm did not "intentionally sell a Sage product to a California, United States, customer," and 4th Paradigm would not have known if a customer used the product in the United States. ECF 64-2, Weinberger Decl., Ex. A at 59:17-60:10. Resolving this disputed fact in Sage's favor still does not show intentional conduct by 4th Paradigm expressly aimed at California. Rather, the deployment of any Sage-branded product by 4th Paradigm's customers is at best unilateral activity of a third party. *See Walden*, 571 U.S. at 284 ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.") (alteration in original).

         As to 4th Paradigm's attendance at the CES Event in Las Vegas, Nevada in 2020, Sage alleges that 4th Paradigm promoted its SAGE-branded products and services at the CES Event, and its attendance was covered by news outlets that reach United States consumers. FAC ¶ 26; Opp. at 6. Jurisdictional discovery shows that 4th Paradigm showed one SAGE device and one conceptual design at the CES Event. ECF 61-5, Rutowski Decl., Ex. D, 4th Paradigm's Suppl. Resp. and Objs. to Plaintiffs' Jurisdictional Interrogs., at 6; Rutowski Decl. Ex. C at 55:14-17, 62:23-63:12. Jurisdictional discovery also shows that, to 4th Paradigm's best knowledge, the flyers distributed at the CES Event "were a general introduction to 4th Paradigm and did not use the term 'Sage.'" ECF 61-5, Rutowski Decl., Ex. D, at 8. As to Sage's allegation on the news coverage on 4th Paradigm's attendance at the CES Event, the Court notes that the English article published on fashionnetwork.com does not mention "Sage" or "4th Paradigm" while the two articles published on sohu.com and k.sina.com.cn are in Chinese. *See* ECF 61-7, Rutowski Decl. Ex. F. The Court finds that this evidence does not show that 4th Paradigm expressly aimed at California through its attendance at the CES Event five years ago in Nevada. *See SDS Korea Co. v. SDS USA, Inc.*, 732 F. Supp. 2d 1062, 1072 (S.D. Cal. 2010) (holding that defendant's attendance of a trade show in Las Vegas did not demonstrate conduct directed toward California despite approximately 2,400 California residents attended the trade show). The Court is not persuaded by Sage's reliance on *Portrait Displays* and *Temming*. Opp. at 9 (citing *Portrait Displays, Inc. v. Speece*, 04-CV-1501

(RMW), 2004 WL 1964506, at *6 (N.D. Cal. Sept. 3, 2004) and *Temming v. Summus Holdings, LLC, 21-CV-4858 (LB)*, 2021 WL 5014854, at *5 (N.D. Cal. Oct. 28, 2021)). In both cases, the Court found personal jurisdiction over defendants who attended a trade show in California. *See Portrait Displays*, 2004 WL 1964506, at *6; *Temming*, 2021 WL 5014854, at *1, 5. Unlike those cases, 4th Paradigm attended the CES Event in Nevada.

The Court is also unpersuaded by Sage's argument that the effect of 4th Paradigm's attendance at the CES Event was felt in California, and that 4th Paradigm knew that promoting its SAGE-branded products at the CES Event "would resonate in California." Opp. at 9. Under the effects test, "purposeful availment of the privilege of conducting activities in the forum state can be met by the 'purposeful direction of a foreign act having effect in the forum state.'" *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1111 (9th Cir. 2004) (quoting *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1130 (9th Cir.2003)). In *CE Distribution*, the defendant had a business relationship with plaintiff "spanning a period of several years," was aware that plaintiff was based in Arizona and was the sole distributor of Jensen speakers in the United States. *CE Distribution*, 380 F.3d at 1111. Under these circumstances, considering plaintiff's allegation that defendant intended to undermine plaintiff's status as the sole distributor in the United States, the Ninth Circuit found that defendant had "every reason to know that the effect of the transactions would resonate in Arizona." *Id.* Unlike *CE Distribution*, here, Sage has not shown any evidence that would warrant an inference that 4th Paradigm knew that its attendance at the CES Event in Nevada would cause harm to Sage in California years later. Indeed, Sage's own corporate witness testified that he could not identify any harm felt by Sage due to 4th Paradigm's conduct. ECF 61-6, Rutowski Decl. Ex. E, Sage 30(b)(6) Dep. Tr., at 57:21-58:14.

Sage's "convergence" theory also fails. Opp. at 11-12. As discussed above, Sage still has not alleged an intentional act by 4th Paradigm that was expressly aimed at California that has not been undermined by jurisdictional discovery. The Court is unpersuaded by Sage's reliance on *Sinatra*. Opp. at 11 (citing *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)). In *Sinatra*, the Ninth Circuit found the defendant directed its activities at California by advertising in California to promote its business and was aware that "its services were known to or used by

13

California clients." *Sinatra*, 854 F.2d at 1197. Here, there is no evidence showing that the Yescom contract, which was negotiated in China and entered into in China, had resulted from 4th Paradigm's attendance at the CES Event. *Id.* at 1195 ("[T]he solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment.").

The Court is also unpersuaded by Sage's reliance on the "stream of commerce" theory. Opp. at 12. "Placing a product into the stream of commerce—even if the defendant is aware that the stream of commerce may or will sweep the product into the forum state—does not convert the mere act of placing the product into the stream of commerce into an act of purposeful availment." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 860 (9th Cir. 2022). As discussed above, jurisdictional discovery does not show that 4th Paradigm established a distribution channel or sold its SAGE branded goods to California. *See Pinkerton Tobacco Co. v. Art Factory AB*, No. 2:20-CV-01322-SB-MRW, 2021 WL 541441, at *2 (C.D. Cal. Jan. 28, 2021) (holding the existence of at lease fifty-two infringing fans in the forum state did not support the inference that a distribution channel was intentionally established).

Accordingly, the Court concludes that the second prong of the purposeful direction test is not satisfied.

### iii.     Causing Harm Likely to be Suffered in the Forum State

4th Paradigm argues that harm in California was not foreseeable as Sage Global is a British company with its principal place of business in the United Kingdom and Sage Software is a Virginia company with its principal place of business in Georgia. Mot. at 20-21. In response, Sage argues that 4th Paradigm should have known that Sage would suffer harm because Silicon Valley is the "preeminent hub for software and technological innovation." Opp. at 13.

The Court finds that Sage has failed to satisfy its burden to show that 4th Paradigm's alleged acts caused harm that 4th Paradigm knew was likely to be suffered by Sage in California. In the FAC, Sage alleges that Sage Global is a British company with its principal place of business in the United Kingdom and Sage Software is a Virginia corporation with its principal place of business in Georgia. FAC ¶¶ 7-8. Sage also alleges that it employs nearly 500 people in California with over

14

300 based in the San Jose office. FAC ¶ 46. Sage also alleges that, in fiscal year 2024, sales in California accounted for over 10% of its sales revenue in the United States. *Id.* But Sage is neither incorporated under California law nor maintains its principal place of business in California, and Sage has not established that 4th Paradigm could have foreseen that Sage was likely to suffer harm in California. *See X Corp. v. Ctr. for Countering Digital Hate Ltd.*, 724 F. Supp. 3d 921 (N.D. Cal. 2024) ("For jurisdictional purposes, a corporation incurs economic loss in the forum of its principal place of business."); *Imageline, Inc. v. Hendricks*, No. 09-cv-01870, 2009 WL 10286181, at 4 ("[T]here is no evidence that Defendants, residents of Washington, would reasonably know that Plaintiff, a Virginia corporation, would be likely to suffer harm in California as a result of the allegedly infringing behavior such that Defendants would be subject to a lawsuit in California."). Indeed, jurisdictional discovery shows that Sage's own corporate deponent did not have knowledge of 4th Paradigm and could not identify any harm that was felt by Sage due to 4th Paradigm's infringing conduct in the United States. ECF 61-6, Rutowski Decl., Ex. E, Deposition of Dan Miller, 21:9-24, 57:21-58:14. Sage's reliance on *Panavision* and *CollegeSource* is misplaced. Opp. at 13 (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) and *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011)). In both *Panavision* and *CollegeSource*, the plaintiffs had their principal place of business in California. *See Panavision*, 141 F.3d at 1321; *CollegeSource*, 653 F.3d at 1079.

Accordingly, the Court concludes that the third prong of the purposeful direction test is not satisfied.

\* \* \*

Jurisdictional discovery overall favored 4th Paradigm's position. Where Sage submitted some evidence to refute 4th Paradigm's evidence, the Court has credited Sage's allegations, but many of Sage's allegations have been successfully refuted. Even so, on balance, the Court finds that Sage has failed to establish that 4th Paradigm conducted an intentional act aimed at California. Because Sage has not met its burden to satisfy the first prong of the personal jurisdiction test, the Court need not reach the second and third prongs of the test. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068-69 (9th Cir. 2017).

15

### 2. Personal Jurisdiction under Federal Long-Arm Statute Under Fed. R. Civ. P. 4(k)

Where an international defendant has insufficient contacts with a particular state to warrant jurisdiction, Federal Rule of Civil Procedure 4(k)(2) provides a basis for establishing jurisdiction if "the United States serves as the relevant forum for a minimum contacts analysis." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (citation omitted). Under Rule 4(k)(2), personal jurisdiction is proper where (1) the claim against the defendant arises under federal law, (2) the defendant is not "subject to the personal jurisdiction of any state court of general jurisdiction," and (3) "the federal court's exercise of personal jurisdiction must comport with due process." *Id.* at 1159. "The due process analysis under Rule 4(k)(2) is nearly identical to the traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendants] and the forum state, we consider contacts with the nation as a whole." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007).

4th Paradigm argues that Sage fails to allege personal jurisdiction under Fed. R. Civ. P. 4(k) because the Complaint fails to allege "any activities related to its claims purposefully directed anywhere in the United States." Mot. at 25. In response, Sage argues that "the first two prongs are satisfied because (1) this lawsuit arises under the Lanham Act . . .; and (2) Defendant has not identified any state court of general jurisdiction to which it is subject to personal jurisdiction." Opp. at 18. As to the third prong, Sage argues that 4th Paradigm sells its infringing products to consumers in the United States as evidenced by 4th Paradigm's placement on the U.S. Department of Commerce's Bureau of Industry and Security blacklist. *Id.* Sage also argues that 4th Paradigm has developed sufficient "minimum contacts" because 4th Paradigm "places its products in a stream of commerce that foreseeably . . . culminates in the United States." *Id.*

The Court agrees with Sage that the first two prongs of the test are satisfied. As to the first prong, here, Sage asserts a federal trademark infringement claim under 15 U.S.C. § 1114(1), FAC ¶¶ 51-58, and a federal unfair competition and false designation of origin claim under 15 U.S.C. § 1125(a)(1)(A), FAC ¶¶ 59-67. As to the second prong, 4th Paradigm does not identify any statement in which it would be subject to personal jurisdiction, and thus this requirement is met. *Holland Am.*

*Line Inc.*, 485 F.3d at 462.

As to the third prong, the Court finds that 4th Paradigm performed the following acts directed to the United States: 1) in 2020, 4th Paradigm attended the CES Event in Las Vegas, Nevada, FAC ¶¶ 24-26; 2) in August 2020, 4th Paradigm participated in the KDD Cup held in San Diego, California, *id.* ¶ 30; 3) in 2022, 4th Paradigm participated in the IDSA competition, *id.* ¶ 31; and 4) in March 2023, the U.S. Department of Commerce's Bureau of Industry and Security blacklisted 4th Paradigm and added 4th Paradigm to its "Entity List," *Id.* ¶ 32. Nonetheless, the Court finds that those contacts are "too insignificant to invoke nationwide jurisdiction." *Holland Am. Line Inc.*, 485 F.3d at 462. 4th Paradigm's placement on the Entity List does not support an inference that it sells Sage branded products to consumers in the United States. *See* 15 C.F.R. Part 744 (2023) (exports, reexports and selected transfers are restricted without a license for Listed Entities). Instead, as confirmed by jurisdictional discovery, 4th Paradigm does not sell SAGE-branded products to customers in the United States. ECF 61-4, Rutowski Decl. Ex C at 15:5-10, 29:8-30:5, 30:23-31:24, 32:9-17, 33:19-35:24. Jurisdictional discovery also shows that 4th Paradigm has never issued a product license in the United States under the Sage mark. *Id.* at 44:10-13. Sage does not allege, and the record does not show that 4th Paradigm has any "offices, employees, or other related connections in the United States." *Holland Am. Line Inc.*, 485 F.3d at 462. Thus, the Court finds that 4th Paradigm's contacts with the United States are "scant, fleeting, and attenuated" and are insufficient to support a nationwide jurisdiction in the United States. *Holland Am. Line Inc.*, 485 F.3d at 462 ((holding that defendants' contacts with the United States, including giving a presentation on a cruise ship, sponsoring a reception and dinner tables, and occasional visits to cruise ships and advertising in various marine publications, "hardly constitute significant contacts" and declining to exercise jurisdiction under Rule 4(k)(2)). The Court is also not persuaded by Sage's argument that because 4th Paradigm placed its products in a stream of commerce, 4th Paradigm "has developed sufficient 'minimum contacts'" with the United States because it could foresee its products would culminate in the United States. Opp. at 18. Placing a product in the stream of commerce, "without more," is not sufficient to establish a purposeful act "directed toward a forum state." *Holland Am. Line Inc.*, 485 F.3d at 459 (citing *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112

(1987)).

Sage's reliance on *Ayla* is not helpful to Sage. Opp. at 19 (citing *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 983 (9th Cir. 2021)). In *Ayla*, the Ninth Circuit found Alya Skin did "more than merely place its products into the stream of commerce" based on the facts that: 1) Alya Skin's sales to American consumers were "substantial;" 2) Alya Skin offered its products directly for sale to the United States on its website; 3) Alya Skin contracted with a fulfilment center in Idaho to ship its products throughout the United States; and 4) as evidenced by Alya Skin's purported FDA approval, Alya Skin "sought out the benefits afforded by" regulatory regime in the United States. *Id.* at 981-82. Unlike *Ayla*, here, none of those contacts are present and any contacts between 4th Paradigm and the United States are at best "random, isolated, or fortuitous." *Id.* at 981 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).

For the above reasons, the Court GRANTS 4th Paradigm's motion to dismiss on the grounds that Sage has failed to allege personal jurisdiction under Fed. R. Civ. P. 4(k). Having already been granted jurisdictional discovery, it is clear that further amendment would be futile.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that 4th Paradigm's Motion to dismiss for lack of personal jurisdiction is GRANTED. This case is DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction.

Dated: July 30, 2025

_____
BETH LABSON FREEMAN
United States District Judge